UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION



UNITED STATES OF AMERICA

v.   CASE NO. 6:10-cr- 109-ORL-35 DAB

DAVID MERRICK

18 U.S.C. § 371
18 U.S.C. § 1957
18 U.S.C. § 981(a)(1)(C) – Forfeiture
28 U.S.C. § 2461(c) – Forfeiture
18 U.S.C. § 982 – Forfeiture

## INFORMATION

The United States Attorney charges:

### COUNT ONE
### (CONSPIRACY)

#### A. INTRODUCTION

At all times material to this Information:

1. Trader's International Return Network (TIRN) was a Panamanian corporation created by defendant DAVID MERRICK and his co-conspirators in May 2008, and was headquartered in Panama City, Panama. It claimed on its website that it had offices in Switzerland, Kuala Lumpur, Malaysia, and Dubai. TIRN was not a corporation or business registered in the United States and was never registered with the Securities Exchange Commission (SEC). Defendant DAVID MERRICK was President of TIRN and served as TIRN's investment adviser.

2. MS, Inc. ("MS"), GTT Services, Inc. ("GTT"), MDD Consulting, Inc. ("MDD"), and Go Tourism LLC ("Go Tourism") were shell companies used by defendant DAVID MERRICK and his co-conspirators.

3. MS, Inc. was a Florida corporation with its principal place of business in Maitland, Florida. According to its articles of incorporation, MS was purportedly in the business of "IT marketing services." Investors in TIRN deposited their funds in an account in the name of MS. Defendant DAVID MERRICK was Secretary of MS from January 28, 2009 to May 11, 2009, when he removed himself as an officer.

4. MDD Consulting, Inc. was a Florida corporation with its principal place of business in Apopka, Florida. The business purpose of MDD is unknown; its articles of incorporation stated that the purpose for which it is organized is "any and all lawful business." MDD was incorporated on February 2, 2009. Defendant DAVID MERRICK was the President.

5. Go Tourism LLC was a Florida corporation with its principal place of business in Margate, Florida. According to its articles of incorporation, Go Tourism was purportedly in the business of "marketing e-tourism." Defendant DAVID MERRICK was President of Go Tourism from its incorporation on January 15, 2008 to May 23, 2008, when he removed himself as President and became Vice-President.

6. GTT Services Inc. was a Florida corporation with its principal place of business in Orlando, Florida. The business purpose of GTT is unknown; its articles of incorporation stated that the purpose for which it is organized is "any and all lawful business." Defendant DAVID MERRICK was President of GTT from its incorporation on January 29, 2008 to April 30, 2009.

7. Defendant DAVID MERRICK was the authorized signatory for accounts at numerous banks in the names of MS, GTT, Go Tourism, and MDD. Defendant DAVID

MERRICK did not hold any securities licenses and has never been registered with the SEC in any capacity.

### B. THE AGREEMENT

8. From no later than May 2008, and continuing thereafter through in or about October 2009, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

### DAVID MERRICK

the defendant herein, did knowingly and willfully combine, conspire, confederate, and agree, with others both known and unknown to the Grand Jury, to commit offenses against the United States, to-wit: Wire Fraud, in violation of Title 18, United States Code, Section 1343; Money Laundering, in violation of Title 18, United States Code, Section 1957; Securities Fraud, in violation of Title 15, United States Code, Section 78j(b), and Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission; and Sales of Unregistered Securities, in violation of Title 15, United States Code, 77e(a).

### C. MANNER AND MEANS OF THE CONSPIRACY

9. The substance of the conspiracy included, among other things, the following:

    a. It was a part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did incorporate Trader's International Return Network (TIRN) as a Panamanian corporation, and would and did claim on its website that it had offices in Switzerland, Kuala Lumpur, Malaysia, and Dubai.

b.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did use MS, Inc. ("MS"), GTT Services, Inc. ("GTT"), MDD Consulting, Inc. ("MDD"), and Go Tourism LLC ("Go Tourism") as shell companies.

c.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would offer and sell securities in TIRN in the form of investment contracts to investors.

d.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did have TIRN investors deposit their funds in an account in the name of MS.

e.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did serve as the investment adviser to TIRN even though he was not registered with the Securities and Exchange Commission (SEC) as an investment adviser.

f.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did represent to prospective and actual investors that TIRN was a private investment club.

g.  It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did represent on TIRN's website that TIRN pools investors' funds and uses "multiple investment companies, proprietary computer software programs, and professional investment partners and individual traders" to invest TIRN's funds "on a global basis and diversified into many different types of investments such as International Bonds, International Currency Exchange,

International Stock Markets, and many other types of investment vehicles, including currency trading (Forex), precious metals, retail real estate, and energy investments.

  h. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did solicit investors throughout the United States, including Florida, California, and Texas, and throughout the world, including Mexico and Serbia, online through at least one of TIRN's websites, www.mytirn.com, as well as in person through lunch and dinner seminars and group presentations.

  I. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators did advertise to investors on TIRN's website and at various public engagements, false monthly dividends earned by TIRN investors in order to induce investment with TIRN.

  j. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did conduct free lunch seminars in Florida and Tennessee in May, June, and July, 2009 in order to induce investment with TIRN.

  k. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did intentionally mislead their investors with oral and written misrepresentations by telling them their money would be spent on Forex, international bonds, international stock market and other investments, when, in fact, defendant DAVID MERRICK and his co-conspirators transferred the money to their own personal checking accounts and to accounts unrelated to TIRN's operations that they controlled.

     l.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would open bank accounts in Panama, Switzerland, and Hong Kong.

     m.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did falsely advise investors that TIRN "utilize[s] professional outside sources to invest [TIRN's] portfolio, some using proprietary software" and was exempt from federal securities laws.

     n.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did falsely state that TIRN partially owned a trading firm and used twelve traders at this firm and proprietary software to invest.

     o.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did tell investors they would receive 9% to 22% monthly dividends.

     p.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did fail to disclose that those dividends to which reference is made in paragraph 9(o) would come from other investors' money, as opposed to TIRN's investment profits.

     q.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would create GTT Services bank accounts at Chase/WAMU to accept wires/funds from TIRN investors.

      r.     It was a further part of the conspiracy that from at least May 2008 through December 2008, defendant DAVID MERRICK and his co-conspirators would instruct investors to deposit their funds in a Bank of America account in the name of MS.

      s.     It was a further part of the conspiracy that, in December 2008, defendant DAVID MERRICK and his co-conspirators would and did e-mail investors and instruct them to stop depositing funds in the MS account and instruct investors to deposit funds in accounts in the name of GTT at Washington Mutual or Regions Bank.

      t.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did authorize the transfer of investor funds deposited in the MS and GTT accounts at these banks to other banks in the names of MS, GTT, MDD, and Go Tourism.

      u.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did fail to use investor funds for investments in securities or other investments, as represented.

      v.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would not and did not transfer any investor funds to a trader or other investment agent who was to invest such funds and then distribute the proceeds and/or principal to investors.

      w.     It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did misappropriate investor funds in a Ponzi scheme.

x. It was a further part of the conspiracy that defendant DAVID MERRICK would and did write checks in amounts of, and wire transferred to himself, at least $2.4 million in TIRN investor funds from the MS, GTT, and other accounts and charged at least $1.3 million in personal expenditures, such as travel, dining, and entertainment, on credit cards in the names of MS and GTT, for a total of at least $3.7 million.

y. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did authorize the transfer of at least $8.8 million of investor funds to Anres Technologies Corporation ("Anres"), a privately-owned company that distributed and marketed stored value or pre-paid debit cards, to repay other investors in a Ponzi scheme.

z. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did represent that an investor who wished to withdraw his or her funds would receive a pre-paid VISA debit card provided by Anres loaded with the investor's initial investment and return on the investment, and useable at any ATM worldwide.

aa. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did not tell investors that the money loaded on the Anres debit card was other investors' money.

bb. It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did authorize the transfer of at least $2.3 million from the MS and GTT accounts under the control of defendant DAVID

MERRICK and his co-conspirators to accounts in Panama, Mexico, Malaysia, Switzerland, and the Netherlands.

      cc.    It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did operate MS, GTT, MDD, and Go Tourism as an "alter ego" in this Ponzi scheme.

      dd.    It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did direct investors to deposit their funds into the MS and GTT accounts.

      ee.    It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did authorize transfer of funds from these accounts to the MDD and Go Tourism accounts.

      ff.    It was a further part of the conspiracy that defendant DAVID MERRICK and his co-conspirators would and did use MS, GTT, MDD, and Go Tourism to misappropriate investors' funds and to continue the Ponzi scheme.

### D. OVERT ACTS

10.    In furtherance of the conspiracy, and to effectuate its objectives, the following overt acts, among others, were committed within the Middle District of Florida, and elsewhere:

      a.    On June 16, 2008, defendant DAVID MERRICK and his co-conspirators incorporated Trader's International Return Network (TIRN) as a Panamanian corporation headquartered in Panama City, Panama.

  b. On July 22, 2008, defendant DAVID MERRICK wrote two checks on MS, Inc.'s Regions Bank checking account, number xxxxx4475, payable to MS, Inc., one for $25,000.00 and one for $30,000.00.

  c. On September 20, 2008, defendant DAVID MERRICK wrote a $50,000.00 check on MS, Inc.'s Regions Bank checking account, number xxxxx4475, payable to MS, Inc.

  d. On October 14, 2008, defendant DAVID MERRICK opened Washington Mutual Business Analysis Checking Account number xxxxxxxxxx6234 in the name of GTT Services with defendant DAVID MERRICK listed as the signor on the account.

  e. On January 29, 2009, defendant DAVID MERRICK wrote a $100,000.00 check on MS, Inc.'s Bank of America checking account, number xxxxxxxx8975, payable to defendant DAVID MERRICK.

  f. On February 1, 2009, defendant DAVID MERRICK opened MDD Consulting's BB&T Bank Free Business Checking Account #xxxxxxxxx5598.

  g. On March 3, 2009, defendant DAVID MERRICK wrote a $300,000.00 check on MS, Inc.'s Mercantile Bank checking account, number xxxxxx3683, payable to MS, Inc.

  h. On March 3, 2009, defendant DAVID MERRICK wrote a $250,000.00 check on MS, Inc.'s Mercantile Bank checking account, number xxxxxx3683, payable to GTT Services.


i.  On March 27, 2009, check number 1093 was written from defendant DAVID MERRICK's King Trust's BB&T Account to Courtesy Acura for the purchase of a 2009 Acura MDX in the amount of $41,706.18 titled to defendant DAVID MERRICK and his wife.

j.  On April 1, 2009, check #1022 was written from MS, Inc.'s BB&T Account to Courtesy Acura to purchase a 2009 Acura RL for $33,917.18 titled to defendant DAVID MERRICK.

k.  On May 4, 2009, defendant DAVID MERRICK wrote a $90,000.00 check on MS, Inc.'s BB&T checking account, number xxxxxxxxx5393, payable to DAVID MERRICK.

l.  On May 4, 2009, defendant DAVID MERRICK wrote a $150,000.00 check on MDD Consulting, Inc. BB&T checking account, number xxxxxxxxx5598, payable to DAVID MERRICK.

m.  From on or about May 16, 2009 to May 19, 2009, defendant DAVID MERRICK traveled to Antigua to a TIRN International Conference to promote the scheme.

n.  On August 31, 2009, a wire in the amount of $703,637.94 was sent from the King Trust account, BB&T Account number xxxxxxxx1935, to Brokers Title of Leesburg to complete the purchase by defendant DAVID MERRICK and his wife of the house located at 5323 Banana Point Road, Okahumkpa, Florida, 32762.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## (MONEY LAUNDERING)

11. Paragraphs one through seven and paragraph nine of Count One are hereby re-alleged and incorporated by reference as though fully set forth herein.

12. On or about August 31, 2009, in Orange County, Florida, in the Middle District of Florida, and elsewhere,

### DAVID MERRICK

the defendant herein, knowingly and willfully engaged and attempted to engage in monetary transactions affecting interstate commerce, in criminally derived property of a value greater than $10,000.00, such property having been derived from specified unlawful activities, that is, Wire Fraud, in violation of Title 18, United States Code, Section 1343; Securities Fraud, in violation of Title 15, United States Code, Section 78j(b), and Rule 10b-5 (17 C.F.R. Section 240.10b-5) of the Rules and Regulations promulgated by the United States Securities and Exchange Commission; and Sales of Unregistered Securities, in violation of Title 15, United States Code, 77e(a), in that defendant DAVID MERRICK did knowingly withdraw, transfer, and exchange, and cause the withdrawal, transfer, and exchange of monetary instruments and funds, to wit: a wire in the amount of $703,637.94 was sent from the King Trust account, BB&T Account number xxxxxxxx1935, to Brokers Title of Leesburg to complete the purchase by defendant MERRICK and his wife of the house located at 5323 Banana Point Road, Okahumkpa, Florida, 32762.

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

1.     The allegations contained in Count One of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     From his engagement in the violations alleged in Count 1 of this Information, punishable by imprisonment for more than one year, the defendant

## DAVID MERRICK

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all of his interest in any property constituting or derived from proceeds obtained directly or indirectly as a result of the said violations. The assets to be forfeited specifically include, but are not limited to, the following:

    A.   Financial Accounts

        i.   $428,299.71 from Washington Mutual Bank Account Number 0940-0000153677-1 held in the name of Eagle Trust Holding, Inc.;

        ii.   $901,774.31 from Washington Mutual Bank Account Number 940-153623-4 held in the name of GTT Services, Inc.;

        iii.   $27,699.51 from BB&T Bank Account Number 0000147005598 held in the name of MDD Consulting, Inc.;

        iv.   $33,391.97 from BB&T Bank Account Number 0000140731935 held in the name of King Trust;

        v.   $372,547.26 from BB&T Bank Account Number 000014639926 held in the name of Maryland Trust;

vi. $6,822.99 from McCoy Federal Credit Union Account Number 263589-SD-8 held in the name of David and Marilyn Merrick;

vii. $134,350.84 from McCoy Federal Credit Union Account Number 263589-S-0 held in the name of David and Marilyn Merrick;

viii. $21,101.49 from Bank of America Account Number 488013790369 held in the name of Anres Technologies;

ix. $224,807.71 from Bank of America Account Number 488018834424 held in the name of Anres Technologies;

x. $19,988.82 from Bank of America Account Number 488009855195 held in the name of Anres Technologies;

xi. $750,762.79 from BB&T Bank Account Number 000-08-20-54-665 held in the name of David Merrick;

xii. $174,881.42 from Credit Suisse Bank Account Number 0835-1454242-5 held in the name of Mr. Humayun Mahamood, Zurich Insurance Company;

xiii. $473,227.27 from J.P. Morgan Chase, NA Bank Account Number 824224307 held in the name of MS Inc.;

xiv. Approximately $50,000.00 from J.P. Morgan Chase, NA Bank Account Number 824275747 held in the name of Eagle Trust Holdings Inv, LLC;

xv. Approximately $1,000.00 from J.P. Morgan Chase, NA Bank Account Number 9401536763 held in the name of Eagle Trust Holdings, Inc.;

xvi. Approximately $5,000.00 from J.P. Morgan Chase, NA Bank Account Number 824224331 held in the name of Eagle Trust Holdings, Inc.;

xvii. Approximately $270,496.91 from J.P. Morgan Chase, NA Bank Account Number 3598191381 held in the name of Eagle Trust Holdings, Inc.;

xviii. Approximately $555.63 from J.P. Morgan Chase, NA Bank Account Number 421-804928-0 held in the name of GTT Services, Inc.;

xix. Approximately $19,065.77 from SunTrust Bank Account Number 1000069973799 held in the name of Go! Tourism LLC;

xx. Approximately $3,029,000.00 from Stanford Bank, Panama, Account Number 302-304-10773 held in the name of My TIRN Foundation;

xxi. Approximately $132,566.50 from Stanford Bank, Panama, Account Number 302-12-12855 held in the name of David Merrick;

xxii. Approximately $250,000.00 from Stanford Bank, Panama, Account Number 606 held in the name of David Merrick;

xxiii. Approximately $510,100.59 from Stanford Bank, Panama, Account Number 16026 held in the name of David Merrick;

xxiv. Approximately $175,000.00 from Banco Delta, Panama, Account Number 01-050-0000401 held in the name of David Merrick;

xxv. Approximately $240,000.00 from Banco Delta, Panama, Account Number 01-050-0000463 held in the name of David Merrick;

xxvi. Approximately $160,000.00 from Banco Delta, Panama, Account Number 01-050-0000464 held in the name of David Merrick;

xxvii. Approximately $125,000.00 from Banco Delta, Panama, Account Number 01-050-0000477 held in the name of David Merrick;

xxviii. Approximately $125,000.00 from Banco Delta, Panama, Account Number 01-050-0000478 held in the name of David Merrick;

xxix. Approximately $25,000.00 from Banco Delta, Panama, Account Number 001-021-00016386-001 held in the name of David Merrick;

  xxx. Approximately $10,000.00 from Banco Delta, Panama, Account Number 001-021-00016386-002 held in the name of David Merrick; and

  xxxi. Approximately $153,119.12 from Banco Delta, Panama, Account Number 001-021-00016386-002 held in the name of David Merrick and Aziel Omar Perez Sanchez.

 B. Vehicles

  I. 2009 Acura MDX, VIN #2HNYD28409H513813, titled to David and Marilyn Merrick; and

  ii. 2009 Acura RL, VIN #JH4KB26609C000813, titled to David Merrick.

 C. The real properties, including all improvements thereon and appurtenances, thereto located at:

  I. 5233 Banana Point, Okahumpka, Florida, 34762, titled in the name of David and Marilyn Merrick, which residence was paid for by a $703,637.94 payment traceable to wire fraud proceeds;

  ii. 680 Mount Stirling Avenue, Apopka, Florida, 32712, titled in the name of David and Marilyn Merrick, which mortgage was paid off with a $223,701.30 payment traceable to wire fraud proceeds; and

  iii. 3748 Idlebrook Circle, Apartment 210, Casselberry, Florida, 32707, which mortgage was paid off with a $108,079.91 payment traceable to wire fraud proceeds.

 D. $505,337.00 in United States currency.

 E. A forfeiture money judgment of at least $15,000,000.00, representing the amount of proceeds obtained as a result of the conspiracy charged in Count One.

3. The allegations contained in Count Two of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

16

4.  From his engagement in the violations alleged in Count Two of this Information, punishable by imprisonment for more than one year, the defendant

**DAVID MERRICK**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a) any property, real or personal, involved in such offense, or any property traceable to such property. The assets to be forfeited specifically include, but are not limited to, the following:

    A.    5233 Banana Point, Okahumpka, Florida, 34762, titled in the name of David and Marilyn Merrick.

5.  If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

A. BRIAN ALBRITTON
United States Attorney

By: _____
I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division

By: _____
Roger B. Handberg
Assistant United States Attorney
Chief, Orlando Division